HIRSCHBERG, P. J., JENKS and HOOKER, JJ., concurred; WOODWARD, J., voted for affirmance on the opinion of CRANE, County Judge.

Judgment and order of the County Court of Kings county reversed and new trial ordered, costs to abide the event.

The following is the opinion of CRANE, J.:

CRANE, J.:

I have decided a case similar to this (*Schwartzman* v. *Brooklyn Heights R. R. Co.*, 50 Misc. Rep. 116). The opinion in that case I make the opinion in this, and give the reasons therein stated for granting the motion made herein to direct a verdict for the defendant.

---

In the Matter of the Application of EMMA WALKER, Appellant, that a Peremptory Writ of Mandamus Issue to WILLIAM H. MAXWELL, as City Superintendent of Schools of the City of New York, Respondent.

Second Department, June 7, 1907.

**Municipal corporations — school teachers in city of New York — list of eligibles.**

Section 1081 of the original charter of Greater New York, continued as section 1089 of the amended charter, providing that the city superintendent in preparing lists of eligible school teachers shall include the names of those duly licensed in the several boroughs prior to the taking effect of the charter,

applies only to teachers actually engaged in teaching at the time the charter took effect, and one who, although formerly licensed to teach in Brooklyn and New York, had resigned and was not teaching at the time the charter went into effect is not entitled to have her name placed upon the list of eligibles.

APPEAL by the petitioner, Emma Walker, from a final order of the Supreme Court, made at the Queens County Special Term and entered in the office of the clerk of the county of Queens on the 2d day of March, 1907, denying the petitioner's motion for a peremptory writ of mandamus.

*David Ross*, for the appellant.

*Stephen O'Brien* [*Theodore Connoly* and *William B. Ellison* with him on the brief], for the respondent.

Order affirmed, with costs, upon the opinion of Mr. Justice GARRETSON at Special Term.

JENKS, HOOKER, GAYNOR, RICH and MILLER, JJ., concurred.

The following is the opinion delivered at Special Term:

GARRETSON, J.:

Upon the uncontroverted facts it would seem that the relator would be entitled to the relief which she seeks in this proceeding but for the fact that on the 1st day of January, 1898, when the Greater New York charter went into effect, she was not a teacher in any of the civil divisions consolidated and merged into the greater city. Relator was first licensed to teach July 1, 1871, by the city superintendent of public schools in the former city of Brooklyn, and again on June 7, 1879, by the city superintendent of the former city of New York. It may be assumed that she served in teaching employment in the schools of those cities under such licenses respectively. It appears from the record and was admitted on the argument that in September, 1881, she resigned her position as teacher in the department of education in the then city of New York and remained out of the service for eighteen years thereafter. On January 1, 1898, she was not teaching in any of the schools of the territory embraced within the present city. It is inferred that her present employment began in the year 1899. The right to the relief

asked for is dependent upon her status when the charter went into effect and upon the construction and application of section 1081 of the original charter (Laws of 1897, chap. 378) and of section 1089 of the amended charter (Laws of 1901, chap. 466, as amd. by Laws of 1901, chap. 718), the latter section being a continuance and amendment of the former, but making no substantial changes therein so far as it applies to this case. The section, among other things, provides: "The board of examiners shall hold such examinations as the city superintendent may prescribe and shall prepare all necessary eligible lists. * * * The names of those to whom licenses have been granted, including those exempted from examination and those duly licensed in the several boroughs prior to the date on which this act takes effect, shall be entered by the city superintendent upon lists to be filed in his office, a separate list being made for each grade or kind of license for which the board of education shall by its by-laws make provision; and such lists shall always be open to the inspection of the members of the board of education, the members of the school boards, the borough superintendents, the associate superintendents, the inspectors and the principals of schools. Except as superintendent or associate superintendent, as supervisor or director of a special branch, as principal of, or teacher in a training school or high school, no person shall be appointed to any educational position whose name does not appear upon the proper list."

Section 1103 of the original charter (section 1090 of the amended charter) provides for the promotion of principals and teachers "from the list of properly certificated principals and teachers and other persons eligible for service in the schools of the borough in the positions to be filled."

Relator asks that the defendant city superintendent be required to place her name upon the eligible list (by whatever name said list be known) of persons holding "Teacher's license for promotion" in the elementary public schools in the city of New York at the same point upon the said eligible list, relatively, to the other names thereon as that at which her name would have appeared if her name had been placed thereon as required by the section first cited.

It was said in *People ex rel. Sprague* v. *Maxwell* (87 App. Div. 391): "It is clear that the Legislature intended in providing for

these eligible lists that no names should be placed thereon except those of persons qualified to teach at the present time. The object of the provision relating to those holding licenses from city superintendents was to continue upon the eligible list without further examination those engaged in teaching within the limits of Greater New York at the time the Greater New York charter took effect."

Inasmuch as relator was not engaged in teaching within such limits when the charter took effect she is not entitled to the benefit of the sections above cited.

It follows that the relator's application for a peremptory writ of mandamus should be denied, with twenty-five dollars costs.